# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ERNESTO PENA, JR., | ) | CASE NO. 3:16-CV-01023 |
| | ) | |
| PETITIONER, | ) | JUDGE JAMES G. CARR |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| | ) | |
| NEIL TURNER, WARDEN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| RESPONDENT. | ) | |

On April 28, 2016,[1] Petitioner Ernesto Pena, Jr. ("Petitioner" or "Pena"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.   Pena challenges the constitutionality of his conviction and sentence in September 2012 in *State of Ohio v. Ernesto Pena*, Case No. 201201965 (Lucas County).  Doc. 1.  Pena previously filed a federal habeas petition pertaining to the same 2012 conviction and sentence in this Court.  *See* Case No. 3:15-cv-01151.  Pursuant to Pena's request, that petition was dismissed without prejudice on February 5, 2016.  *See Pena v. Turner*, Case No. 3:15-cv-01151, Docs. 14 & 15.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.   For the reasons set forth herein, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (Doc. 6) and **DISMISS with prejudice** Pena's Petition (Doc. 1) as barred by the statute of limitations.

## I.     Factual Background

---

[1] However, as discussed below, Pena's Petition is deemed filed as of April 14, 2016, the date he states he placed it in the prison mailing system.

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Sixth District Court of Appeals summarized the facts underlying Pena's conviction as follows:

{¶ 3} On June 2, 2012, while in the home they shared, Dawn Boes and appellant got into a heated argument. Ms. Boes explained, "[t]here was a lot of screaming going on. And he just started hitting me. Back of his hands, fist, his open hand. All over my whole head, my face, my eyes, my jaw." The hitting was not constant but occurred over the course of a few hours. She did not hit back. When Ms. Boes realized an opportunity to flee, she ran to a neighbor's house and called 9–1–1. It was midnight.

{¶ 4} The 9–1–1 tape was played. The jury could hear the victim report the altercation, ask for medical help, and state that she could not see out of her left eye.

{¶ 5} She testified that when the fire department arrived, a medic "flashed a flashlight at me in my eye, basically, and handed me an ice pack." She indicated that she had difficulty communicating with the responding police officer because she was in shock and in pain. The victim admitted she had been drinking and that she had taken a prescription anxiety medication earlier in the day. She testified that the officer suggested she file a report in the morning.

{¶ 6} Ms. Boes went to her mother's home to spend the night. There, Ms. Boes blew her nose and felt her eye "pop[ ] out of the socket." Her mother drove her to the emergency room around 3:00 a.m. By then, her eye had "swollen shut." After a medical exam, x-ray, and CT scan, Ms. Boes was informed that her left eye socket was fractured in two places and that she suffered nerve damage on the left side of her face.

{¶ 7} Photographs and medical reports were introduced into evidence. The photographs were taken at the hospital and depicted swelling and bruising on Ms. Boes' face around her left eye. The final diagnosis on the medical report indicates: "(1) Left orbital floor and posterior and medial wall fractures. (2) Multiple contusions. (3) Acute alcohol intoxication."

{¶ 8} Ms. Boes indicated that since the altercation, the left side of her face has been "numb" and "tingling" and that she has been having trouble with her vision

in her left eye. She asserted that the doctors had indicated that "the nerve damage will probably always be there."

{¶ 9} Carl Schwirzinski, the patrol officer who responded to the 9–1–1 call, testified that when he arrived at the scene, Ms. Boes had already been treated by paramedics and had a bag of ice on her face. The officer stated that Ms. Boes was "a little hysterical. She was intoxicated. She had, um, a little bit of a bruise above her—I can't remember if it's her left or her right eye, but she had a little bit of a knot that was on this side, if I remember right." Ms. Boes identified appellant as her attacker. The patrol officer testified that he made a report and recommended Ms. Boes talk to the prosecutor once she "sobered up." At the time, he did not realize the severity of her injuries.

{¶ 10} When shown the photographs taken of Ms. Boes at the hospital, Officer Schwirzinski indicated that the swelling and extent of bruising apparent in the photographs was not present when he questioned Ms. Boes at the scene.

{¶ 11} Ms. Boes' mother testified that she received a phone call from her daughter just after midnight on June 3, 2012. When she arrived at the scene, the mother was "devastated" when she saw her daughter's face. The mother explained, "It was—it was pretty bloody and bruised and she was bruised everywhere." The mother took Ms. Boes back to the mother's apartment. A short time later, the mother took her daughter to the hospital after Ms. Boes blew her nose and her eye "protruded out."

{¶ 12} Police Officer Mary Seng testified that she was called to the hospital in the early morning hours of June 3, 2012, to speak to a victim of an assault. Officer Seng testified that when she arrived, "[Ms. Boes] was very upset. Her eye was swollen almost shut. Very bruised, very swollen. Black and Blue." Ms. Boes indicated to Officer Seng that "her live-in boyfriend had punched her in the eye, had beat her up * * *."

{¶ 13} Upon discovering that Ms. Boes had already reported the incident to the police, Officer Seng reviewed the initial report. Officer Seng believed "the injury was more severe than it appeared initially on the scene." At that point, Officer Seng arranged to have Detective Steve Applin get involved in the investigation. When the detective arrived, Officer Seng supplied him with a copy of the original report.

{¶ 14} Upon the conclusion of Officer Seng's examination, the state rested. The first day of the second trial was over. On the record but outside the presence of the jury, a discussion was held between the parties regarding Detective Applin. The state had listed Applin as a witness and issued a subpoena to ensure his appearance. However, Detective Applin did not appear. At that time, the state did not know why the detective had failed to appear. Appellant's trial counsel indicated that she had intended to cross-examine the detective but had not issued a

subpoena to ensure his appearance. She felt that it was improper for the lead detective on a criminal case not to appear at trial when the detective was referred to during voir dire and during the testimony of Officer Seng. Trial counsel admitted, however, that she did not issue a subpoena to secure Detective Applin's appearance.

{¶ 15} The following morning, the state indicated:

> Judge, I can tell the court that after we broke yesterday I made some efforts to locate Detective Applin. I called over to Toledo Police Department and requested he be located. I also had them check his schedule. It turned out he was on vacation and he did not get my subpoena. He eventually called me at home yesterday evening and he and I discussed the matter. He was actually up in Michigan about 250 miles away from here and was unaware that we were back in trial on this case. I explained the situation to him and he indicated to me that the earliest he could be back in Toledo was two o'clock this afternoon. I e-mailed that information to [trial counsel] as soon as I found out about it and I believe at this point it's her decision to proceed without the detective.

{¶ 16} Appellant's trial counsel responded, "Judge, I did receive that email from [the state] last night and I responded and acknowledged the unavailability, advised [the state] that we would proceed to closing arguments today." Thereafter, appellant's counsel indicated that her client would not take the stand and moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion.

*State v. Pena*, 2014-Ohio-423, ¶¶ 3-16, 2014 WL 505355, ** 1-3 (Ohio App. Ct. Feb. 7, 2014);

Doc. 10-2, pp. 84-88.

## II.    Procedural Background

### A.    State conviction and sentencing

On June 15, 2012, a Lucas County Grand Jury indicted Pena on one count of felonious assault in violation of O.R.C. § 2903.11(A)(1), a felony of the second degree.  Doc. 10-2, pp. 1-2.  Pena, through counsel, pleaded not guilty to the indictment.  Doc. 10-2, p. 3.  The case proceeded to jury trial and, on September 6, 2012, the trial court declared a mistrial because the jury was unable to reach a unanimous verdict.  Doc. 10-2, p. 4.  The trial court rescheduled the case for trial to begin on September 10, 2012.  Doc. 10-2, p. 4.  On September 11, 2012, the jury

in the second trial found Pena guilty of felonious assault in violation of O.R.C. § 2903.11(A)(1),

a felony of the second degree.  Doc. 10-2, pp. 5-6.  On September 26, 2012, the trial court

sentenced Pena to six years in prison.[2]  Doc. 10-2, pp. 7-8.

**B.    Direct appeal**

On October 29, 2012, Pena, through counsel, filed a notice of appeal in the Sixth District

Court of Appeals.  Doc. 10-2, pp. 9-12.  On May 31, 2013, Pena, through counsel, filed his

appellate brief (Doc. 10-2, pp. 13-30), with the following two assignments of error and

statements of issues:

    1.  Appellant's conviction fell against the weight of the evidence.

       <u>Statement of the Issue Presented</u>: Does a defendant's conviction for Felonious
       Assault fall against the manifest weight where the victim was originally
       checked by two agencies and that victim's injuries were determined to be
       insubstantial, where there is a gap in time in the victim's story, and hours
       later, the victim presents to the hospital with an orbital fracture and nerve
       damage?

    2.  Appellant received ineffective assistance of counsel.

       <u>Statement of the Issue Presented</u>: Does a defendant receive ineffective
       assistance of counsel where trial counsel fails to secure the presence of a[n]
       important witness who testified on behalf of the State at the first trial, but
       failed to appear at the retrial, where the defendant is then convicted?

Doc. 10-2, pp. 16-17, 23-26.  The State filed its appellate brief on June 2, 2013.  Doc. 10-2, pp.

31-41.  On July 9, 2013, Pena, through counsel, filed a reply brief.  Doc. 10-2, pp. 42-46.  On

December 12, 2013, Pena, acting *pro se*, filed a Motion to Remove the Counsel and Appoint

New Counsel. Doc. 10-2, pp. 47-77.  Pena argued that there was a conflict in the attorney-client

relationship due to his disagreement with the manner in which his counsel was handling his

appeal.  *Id.*   On February 4, 2014, the Sixth District Court of Appeals denied Pena's request to

---

[2] The sentencing entry was journalized on October 3, 2012.  Doc. 10-2, p. 7.

remove his counsel and appoint new counsel.  Doc. 10-2, pp. 78-82.  On February 7, 2014, the

Sixth District Court of Appeals affirmed the judgment of the trial court.  Doc. 10-2, pp. 83-91.

Pena did not file a notice of appeal with the Supreme Court of Ohio within 45 day of the date of

the court of appeals' decision.  *See* S.Ct.Prac.R. 7.01 (notice of appeal to perfect a jurisdictional

appeal to the Supreme Court of Ohio shall be filed within 45 days from the entry of judgment

being appealed).

**C.     Motion for reconsideration pursuant to Ohio App. R. 26(A)**

On February 25, 2014, Pena, acting *pro se*, filed a motion for reconsideration in the Sixth

District Court of Appeals pursuant to App. R. 26(A).  Doc. 10-2, pp. 92-102.  Pena argued that

there were harmful errors in his trial and appeal and requested that the court of appeals

reconsider his appeal.  *Id.*  He raised the following arguments:

1.   Appellant's conviction fell against the manifest weight of the evidence.

2.   Appellant received ineffective assistance of counsel.

3.   Appellant was denied his rights for a different counsel, and was not allowed to
     add his proposed assignments of error.

Doc. 10-2, pp. 93-101.  On March 4, 2014, the State filed an opposition to Pena's application for

reconsideration, arguing that Pena's application was untimely and otherwise without merit.  Doc.

10-2, pp. 103-105.  Pena filed a reply on March 20, 2014.  Doc. 10-2, pp. 106-111.  On March

21, 2014, the Sixth District Court of Appeals denied Pena's App. R. 26(A) application as

untimely.  Doc. 10-2, pp. 112-113.

On April 17, 2014, Pena, acting *pro se*, filed a notice of appeal and memorandum in

support of jurisdiction with the Supreme Court of Ohio from the Sixth District Court of Appeals'

March 21, 2014, decision denying his motion for reconsideration.  Doc. 10-2, pp. 114-133.  In

his memorandum in support of jurisdiction, Pena raised the following propositions of law:

1. Appellant's conviction fell against the manifest weight of the evidence.

2. Appellant received ineffective assistance of counsel.

3. Ineffective counseling, abuse of discretion and due process errors.

Doc. 10-2, pp. 123-130.  The State waived filing a response.  Doc. 10-2, p. 134.  On June 11, 2014, the Supreme Court of Ohio declined jurisdiction.  Doc. 10-2, p. 135.

**D.     Motion to reopen appeal pursuant to Ohio App. R. 26(B)**

On April 15, 2014, Pena, acting *pro se*, filed a motion to reopen his appeal pursuant to Ohio App. R. 26(B).  Doc. 10-2, pp. 136-154.  Pena raised the following assignments of error:

1. Appellant's counsel failed to effectively argue that the conviction fell against the manifest weight of the evidence.

2. Appellant's counsel failed to effectively argue that the Appellant received ineffective assistance of trial counsel.

3. Appellant['s] counsel failed to raise defendant's proposed assignment of errors, which were prejudicial.

   a. Not raising the issue of severity of injuries.

   b. In Mr. Pena's case, not examining Jane Snyder (victim's mother) is an error for ineffectiveness of trial counsel rather than strategy.

   c. Failure to raise trial counsel's failure to investigate in petit jury array.

   d. Failure to raise, abuse of discretion and ineffective trial counseling: Jurors were inefficient to decide on verdict.  There was a prima facie violation.  Voir dire inquiry into racial bias was not held.

   e. Failure to raise, Rule 404(B) – 911 tape and mention of (motive, intent) "Dropping charges" was more prejudicial than probative.

Doc. 10-2, pp. 138-145.  The State did not file an opposition.  On January 30, 2015, Sixth District Court of Appeals denied Pena's application.  Doc. 10-2, pp. 155-163.  Pena did not file a notice of appeal with the Supreme Court of Ohio from the denial of his App. R. 26(B) application.

**E.      Motion for a delayed appeal**

On June 26, 2014, Pena filed a motion for a delayed appeal with the Supreme Court of Ohio from the Sixth District Court of Appeals' February 7, 2014, decision affirming his conviction and sentence.  Doc. 10-2, pp. 164-181.  On September 3, 2014, the Supreme Court of Ohio denied Pena's motion for a delayed appeal.  Doc. 10-2, p. 182.

**F.      State habeas petition**

On February 12, 2016, Pena filed a state habeas petition (Marion County Common Pleas Case No. 16CV0075).  Doc. 1, p. 4; *see also*

*http://courtrecords.co.marion.oh.us/eservices/?x=60-90VqGo6u*oJ5hkyQfBcLuYXlld*ympTYvIp5JzhfVmQ3Np*eSvvO3WoYMC1GocU9ghkqP*FXIOE5H2bpmMA* (last visited 1/4/2017) (online docket public record search, Last Name – Pena, First Name – Ernesto, Case No. 2016 CV 0075).[3]  Pena claimed: (1) the trial court erred when it denied Pena's motion for acquittal; (2) Pena did not have effective assistance of counsel at trial; (3) Pena's trial counsel failed to cross-examine witness Jane Snyder; (4) evidence of Pena's prior convictions was erroneously admitted into evidence; and (5) the trial court vindictively sentenced Pena because he invoked his right to a trial.  Doc. 1-1, p. 31.  On February 23, 2016, Marion County Court of Common Pleas dismissed Pena's state habeas petition, finding it not well-taken because Pena had failed to attach a copy of his commitment papers to the petition and because the claims raised by Pena were barred by the doctrine of res judicata.  Doc. 1-1, pp. 31-32.

Pena filed an appeal with the Third District Court of Appeals on March 16, 2016 (Case No. 9-16-0011).  Doc. 1-1, p. 5; *see also http://courtrecords.co.marion.oh.us/eservices/?x=60-*

---

[3] Not all state court filings relating to Pena's state habeas petition have been filed in this Court.  However, online dockets are available to the public through the internet, which provide dates of and/or copies of filings relating to Pena's state habeas petition and the appeals arising therefrom.  Judicial notice is taken of these facts.  *See* Fed. R. Evid. 201; *see also e.g., Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

*90VqGo6u*oJ5hkyQfBcLuYXlld*ympTYvIp5JzhfVmQ3Np*eSvvO3WoYMC1GocU9ghkqP*FXI*

*OE5H2bpmMA* (last visited 1/4/2017) (online docket public record search, Last Name – Pena,

First Name – Ernesto, Case No. 09-16-011).  On June 21, 2016, the court of appeals affirmed the

judgment of the trial court.  *Id.*  Thereafter, on July 18, 2016, Pena filed a notice of appeal from

the Third District Court of Appeals' June 21, 2016, decision with the Supreme Court of Ohio

(Supreme Court of Ohio Case No. 2016-1062).

*http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2016/1062* (last visited 1/4/2017).

Also, on July 18, 2016, Pena, acting *pro se*, filed a memorandum in support of jurisdiction

raising the following propositions of law:

1. The Defendant-Appellants United States Constitution Fourteenth Amendment right were violated when the Appellate Court affirmed the Trial Courts judgment denying Appellant's State Writ of Habeas Corpus.

2. The trial court erred when it denied petitioner's motion for acquittal in violation of Petitioner's Fourteenth Amendment right of Due Process and United States Supreme Court ruling in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

3. The Petitioner's Sixth Amendment right to effective assistance of counsel was violated as Petitioner has established this violation in accordance with the United States Supreme Court ruling in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 647.

4. Petitioner's right to confront witnesses pursuant to the Sixth Amendment of the United States Constitution and *Crawford v. Washington*, and *Pennsylvania v. Ritchie*, 480 U.S. 39 , 107 S.Ct. 989, 94 L.Ed.2d 40 were violated.

5. Petitioner's Fourteenth Amendment right to Due Process was violated as Petitioner's prior convictions were admitted that were highly prejudicial and had no probative value pursuant to Evidence Rule 404(B).

6. Petitioner's Fourteenth Amendment right to Due Process was violated when the Trial Court vindictively sentenced Petitioner after he had invoked his right to trial pursuant to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

*Id.*  On November 23, 2016, the Supreme Court of Ohio declined jurisdiction.  *Id.*; *see also* Doc.

15 (Respondent's Notice of Decision by the Ohio Supreme Court).

**G.    Previously filed federal habeas petition**

On June 8, 2015, Pena filed a federal habeas petition in Northern District of Ohio Case No. 3:15-cv-01151, challenging the same conviction and sentence that he challenges in this federal habeas corpus proceeding. *Pena v. Turner*, Case No. 3:15-cv-01151. In that case, this Court denied Pena's motion to stay and granted Pena's motion to dismiss without prejudice. *Id.* (February 5, 2016, Order adopting report and recommendation and Judgment Entry). In granting Pena's motion for voluntary dismissal of his habeas petition without prejudice, the Court warned Pena that 28 U.S.C § 2244(d) provides for a one-year statute of limitations for filing federal habeas petitions, the filing of his § 2254 petition did not stop or toll that one-year period, and that the voluntary dismissal that Pena was requesting would likely prevent him from returning to federal court and filing a timely habeas petition because it appeared that that most, if not all, of Pena's one-year period had already expired. *See* Case No. 3:15-cv-1151, Doc. 14, Page ID# 587 and Page ID# 593.

**H.    Current federal habeas corpus petition**

On April 28, 2016,[4] Pena, acting *pro se*, filed his habeas Petition asserting the following grounds for relief:

> **Ground One**: The trial court erred when it denied Petitioner's motion for acquittal in violation of Petitioner's Fourteenth Amendment Right of Due Process and United States Supreme Court ruling in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 56.
>
> **Supporting Facts**: In this case the prosecution did not present sufficient evidence to prove beyond a reasonable doubt every element to support a conviction for felonious assault.
>
> Prosecutor stated to the jury they did not have to prove every element of the

---

[4] In his Petition, Pena states that he placed his Petition in the prison mailing system on April 14, 2016. Doc. 1, p. 17.

crimes charged.

The only evidence offered at trial in this case was the testimony of the alleged victim who was intoxicated the night in question.

The alleged victim in this case was seen by police and paramedics at the alleged scene but had no discernable injuries or the injuries indicated in this case was several hours later after she was taken to her mother's home and then taken to the hospital.

**Ground Two**: The Petitioner's Sixth Amendment right to effective assistance of counsel was violated as Petitioner has established this violation in accordance with the United States Supreme Court ruling in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**Supporting Facts**: The first error that Petitioner's Trial Counsel made was not to ensure that Detective Applin was at the trial, this is noted when counsel stated that Detective Applin had not appeared to testify on behalf of the State of Ohio.

Trial counsel was ineffective as counsel failed to challenge the cause of Jurors.

Trial counsel was ineffective for not ensuring that the jury represented the Hispanic community, which he is Hispanic himself.

Trial counsel was ineffective as counsel failed to ensure that the Trial Court hold voir dire inquiry into racial prejudice towards the Hispanic, such as Petitioner.

**Ground Three**: Petitioner's right to confront witnesses pursuant to the Sixth Amendment of the United States Constitution and *Crawford v. Washington* and *Pennsylvania v. Ritchie*, 480 U.S. 29, 107 S.Ct. 989, 94 L.Ed.2d 40 were violated.

**Supporting Facts**: Trial counsel failed to cross-examine the victim's mother, Jane Snyder.

Petitioner was also denied the ability to confront Detective Applin in this case as he was the lead investigator or detective.

**Ground Four**: Petitioners Fourteenth Amendment right to due process was violated as Petitioner's prior convictions were admitted that were highly prejudicial and had no probative value pursuant to Evidence Rule 404(B).

**Supporting Facts**: In the case at bar the State moved to admit a 911 tape that was to have been the alleged victim in this case calling for help.  This tape and evidence was admitted at this trial without authentication and verification.  The tape was not admitted in the first trial, but now it was entered in this trial.

The use of the 911 tape was not used in the first trial, led to the conviction of the Petitioner in the second trial.

This tape and the use of the terms of "dropping charges" three times in the States closing arguments demonstrates that its prejudicial value, (which the state used in this case), outweighed its probative value.

**Ground Five**: Petitioners Fourteenth Amendment right to due process was violated when the trial court vindictively sentenced the Petitioner after he had invoked his right to trial pursuant to *North Carolina v. Pearce*, 395 U.S. 711, 23 L.Ed.2d 656, 89 S.Ct. 2072.

**Supporting Facts**: The Trial Court even went on record and notified the Petitioner that if had pled guilty to the charge he would receive the maximum sentence the Court would impose of three (3) years.

After the presentation of all evidence and both sides presented their closing arguments the jury was retired and sent a note to the Trial Court indicating that they could not reach a verdict. The Trial Court re-instructed the Jury and sent them back into the Jury Room for further deliberations.

At sentencing the Trial Court sentenced the Petitioner to a prison term of six (6) years, and a mandatory term of three years post-release control.

Doc. 1, pp. 5-13.

On July 18, 2016, Respondent filed a motion to dismiss. Doc. 6. Pursuant to the Court's subsequent order, on August 31, 2016, Respondent filed a supplemental memorandum. Doc. 10. On November 4, 2016, Pena filed a reply to Respondent's motion to dismiss.[5] Doc. 14. On November 28, 2016, Respondent filed a notice of decision by the Supreme Court of Ohio regarding Pena's appeal from the denial of his state habeas petition. Doc. 15.

### III.    Law and Analysis

Respondent argues that Pena's Petition is barred by the statute of limitations. Alternatively, Respondent argues that Pena's claims are procedurally defaulted.

### A.    Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

---

[5] Also, on October 3, 2016, Pena filed a Traverse. Doc. 11.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling

AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established

law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state

court's decision "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

13

*Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

(Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

## B.    AEDPA statute of limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. §

2244, limits the time within which a person in custody pursuant to the judgment of a state court

may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court.
> The limitation shall run from the latest of --
>
> (A)  the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C)  the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable to
> cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented
> could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondent argues that the Pena's Petition should be dismissed because it is time barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  Doc. 6.  Pena appears to argue that his Petition is timely because he filed a prior federal habeas petition within the one-year statute of limitations and/or because he filed his current federal habeas petition within one-year of pursuing his claims in his state habeas petition.  Doc. 14, p. 2.

On September 26, 2012, the trial court sentenced Pena to six years in prison.[6]  Doc. 10-2, pp. 7-8.  Following an appeal from his conviction and sentence, on February 7, 2014, the Sixth District Court of Appeals affirmed the judgment of the trial court.  Doc. 10-2, pp. 83-91.  Pena did not file a notice of appeal with the Supreme Court of Ohio within 45 day of the date of the court of appeals' decision. *See* S.Ct.Prac.R. 7.01 (notice of appeal to perfect a jurisdictional appeal to the Supreme Court of Ohio shall be filed within 45 days from the entry of judgment being appealed).

Pena filed his current federal habeas Petition with this Court on April 28, 2016.  Doc. 1. In his Petition, Pena certified that he placed his Petition in the prison mailing system on April 14, 2016.  Doc. 1, p. 17.  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Thus, Pena's Petition is deemed filed as of April 14, 2016.

Since Pena did not file an appeal from the Sixth District Court of Appeals' February 7,

---

[6] The sentencing entry was journalized on October 3, 2012.  Doc. 10-2, p. 7.

2014, decision, Pena's conviction became final and the AEDPA statute of limitations began to run when Pena's appellate filing deadline expired, i.e., March 24, 2014, or 45 days after the Sixth District Court of Appeals affirmed his conviction and sentence, and expired under § 2244(d)(1)(A) one-year later on March 24, 2015.[7] *See* S.Ct.Prac.R. 7.01; *see Gonzalez v. Thaler*, — U.S. —, 132 S.Ct. 641, 653-654, 181 L.Ed.2d 619 (2012) (For petitioners not seeking review in the Supreme Court, "the judgment becomes final . . . when the time for pursuing direct review in [the Supreme] Court, or in state court, expires."). Pena's Petition, filed on April 14, 2016, was filed beyond the March 24, 2015, expiration of the statute of limitations. Thus, absent tolling, Pena's Petition is barred by the one-year statute of limitations under § 2244(d)(1)(A).

### a. Pena's Petition is not timely as a result of statutory tolling

*Statutory tolling principles*

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003). "An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, *e.g.*, requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 363-365, 148 L.Ed.2d 213 (2000)). Thus, "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *See Allen v. Siebert*, 552 U.S. 3, 5 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005)); *see also Israfil*, 276 F.3d at 771-772 (A post-conviction petition deemed untimely pursuant to Ohio law is

---

[7] Pena does not assert or argue that the one-year statute of limitations should be calculated under §2244(d)(1)(B), (d)(1)(C), or (d)(1)(D).

not "properly filed" and, therefore, does not toll the statute of limitations).

"[A]n application is pending so long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002). "In other words, until the application has achieved a final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.* at 220. This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

Two recent published Sixth Circuit decisions have addressed the issue of whether the statute of limitations remains tolled during the period of time that a petitioner could, but does not, seek further review in the state court with respect to a petition for post-conviction relief.

In December 2015, the Sixth Circuit in *Scarber v. Palmer*, 808 F.3d 1093 (6th Cir. 2015) considered whether the AEDPA statute of limitations was tolled during the period after the Supreme Court of Michigan had denied review on a post-conviction petition until the petitioner could have filed a motion to reconsider or whether the statute of limitations started to run the day after the Supreme Court of Michigan denied review. In analyzing the issue, the Sixth Circuit observed that the "AEDPA limitation period begins to run after 'the expiration of *the time for seeking* direct review' § 2244(d)(1)(A) (emphasis added). In contrast, it is tolled when 'a properly filed application for State post-conviction or other collateral review . . . is *pending*.' § 2244(d)(2) (emphasis added)." *Id.* at 1095. The court went on to note that, "Congress instructed that the limitations period commences only after 'the time for seeking' direct review has expired[,]" whereas "Congress was less forgiving when it came to tolling during collateral

review, requiring a 'properly filed application' to be 'pending' before the state court." *Id.* at 1095-1096. Considering the foregoing differences in the language of the statute, the court held that, if the petitioner "had resuscitated his petition by seeking reconsideration, the limitation period would have been tolled because an application for state review would still have been pending . . . [h]owever, the AEDPA limitation period does not stop running for a petitioner who had the opportunity to, but did not, file a motion for reconsideration." *Scarber*, 808 F.3d at 1096 (internal citations omitted). Thus, the petitioner was not entitled to tolling of the statute of limitations during the period in which he could have but did not file a motion to reconsider. *Id.* at 1097.

Notwithstanding its decision in *Scarber*, in August 2016, the Sixth Circuit felt that uncertainty remained regarding the meaning of "pending" for the purposes of AEDPA's tolling provisions, stating that, "[t]his case presents an opportunity to clarify a central question at the intersection of AEDPA's limitations and tolling provisions: When is a State post-conviction motion 'pending' for purposes of tolling the limitations period?" *See Holbrook v. Curtin,* 833 F.3d 612, 615 (6th Cir. 2016). The court in *Holbrook* held that the petitioner's "federal habeas petition was timely filed because AEDPA's one-year statute of limitations was tolled during the period in which he could have, but did not, appeal the Michigan Court of Appeals' denial of his motion for post-conviction relief." *Id.* In reaching its decision, the court in *Holbrook* rejected "the argument that dicta in *Scarber* should be taken from its procedural context and read to suggest a petitioner retroactively loses tolling of the time between a lower court's denial and the period for seeking higher court review because such an extrapolation would run afoul of the Supreme Court's decision in *Gonzalez v. Thaler,* — U.S. —, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012)." *Id.* at 618. In relying on *Gonzalez*, the Sixth Circuit observed that "*Gonzalez*

18

considered the AEDPA limitations provision as it related to a direct appeal" but concluded that it was "applicable in equal force to the post-conviction context[.]"  *Id.* at 619.

<u>Application of statutory tolling principles to Pena's Petition</u>

There are five proceedings that did or could have tolled the statute of limitations in this case.  They are considered in order.  For the reasons set forth below, the undersigned concluded that the statute of limitations was tolled only until February 23, 2016, making Pena's Petition filed on April 14, 2016, untimely.

1)  Assuming without deciding that Pena's motion for reconsideration pursuant to Ohio App. R. 26(A), filed on February 25, 2014, constitutes a petition for post-conviction or other collateral review, Pena's motion for reconsideration was not timely filed under Ohio law.  Doc. 10-2, pp. 112-113 (Sixth District Court of Appeals' decision and judgment denying App. R. 26(A) application as untimely).  Thus, Pena's motion for reconsideration pursuant to Ohio App. R. 26(A) did not toll the statute of limitations under § 2244(d)(1)(A).  *See Israfil*, 276 F.3d at 771-772 (A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations).

2)  On April 15, 2014, Pena filed an application to reopen his appeal pursuant to Ohio App. R. 26(B).  Doc. 10-2, pp. 136-154.  The state court of appeals concluded that Pena's application pursuant to App. R. 26(B) was timely (Doc. 10-2, p. 160) but found his application to be without merit (Doc. 10-2, p. 163).  Since Pena's application was timely filed and filed prior to the expiration of the one-year statute of limitations under AEDPA, Pena's application was properly filed and served to toll the statute of limitations until it was no longer pending.  As of April 15, 2014, 22 days of the one-year statute of limitations had elapsed.   The state court of appeals denied Pena's application pursuant to App. R. 26(B) on January 30, 2015.  Doc. 10-2, pp. 155-

19

163.  Although Pena did not file a notice of appeal with the Supreme Court of Ohio from the denial of his App. R. 26(B) application, in light of the Sixth Circuit's decision in *Holbrook*, Pena would be entitled to tolling of the state of limitations for an additional 45 days, i.e., the time in which Pena had to file an appeal with the Supreme Court of Ohio.  *See Holbrook*, 833 F.3d at 615-620.  Thus, Pena's statute of limitations was tolled from April 15, 2014, until March 16, 2015.  As a result of the tolling, it remained the case that, as of March 16, 2015, only 22 of the 365 of Pena's statute of limitations had elapsed.  Pena's statute of limitations resumed running on March 17, 2015, with 343 days remaining and, absent any further statutory tolling, Pena's statute of limitations expired on February 23, 2016.

3)  Pena filed a motion for delayed appeal on June 26, 2014, and the Supreme Court of Ohio denied that motion on September 3, 2014.  Doc. 10-2, pp. 164-181, 182.   A properly filed motion for delayed appeal may toll the statute of limitations but does not serve to restart the statute of limitations.  *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006).  Even if Pena's motion for delayed appeal was properly filed within the meaning of § 2244(d)(2), Pena's filing of a motion for delayed appeal does not provide Pena with any additional tolling since that motion was filed after his App. R. 26(B) application and the Supreme Court of Ohio issued its final decision with respect to Pena's motion for delayed appeal prior to when the court of appeals ruled on Pena's App. R. (26)(B).  In other words, due the filing and pendency of Pena's App. R. 26(B) application, the statute of limitations was already tolled during the pendency of Pena's motion for delayed appeal.

4)  To the extent that Pena claims that the filing of his prior federal habeas petition in 2015 in Case No. 3:15-cv-01151 tolled the statute of limitations, he is mistaken.  *See Duncan v. Walker*, 533 U.S. 167, 181 (2001) ("[A]n application for federal habeas review is not an

20

'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and therefore, the limitations period under § 2244(d)(2) was not tolled while respondent's first federal habeas petition was pending).

5)  The final state post-conviction or collateral review petition that should be addressed with respect to statutory tolling is Pena's February 12, 2016, state habeas petition.  Doc. 1, p. 4; *see also* *http://courtrecords.co.marion.oh.us/eservices/?x=60-90VqGo6u\*oJ5hkyQfBcLuYXlld\*ympTYvIp5JzhfVmQ3Np\*eSvvO3WoYMC1GocU9ghkqP\*FXIOE5H2bpmMA* (last visited 1/4/2017) (online docket public record search, Last Name – Pena, First Name – Ernesto, Case No. 2016 CV 0075).  The trial court dismissed Pena's state habeas petition because Pena failed to comply with the commitment-paper requirement of the statute,[8] a finding that the state court of appeals affirmed as a fatal defect that required dismissal of Pena's state habeas petition.[9]  *http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2016/1062* (last visited 1/4/2017) (online docket, Third District Court of Appeals' June 21, 2016, Judgment Entry, p. 3, attached to Notice of Appeal, filed July 18, 2016).  Since Pena's state habeas petition was dismissed on the basis that he had not complied with Ohio's state habeas petition filing requirements, his state habeas petition was not properly filed and therefore the statute of limitations was not tolled as a result of that filing.  *Artuz*, 531 U.S. at 8 ("[A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." (emphasis in original); *see also e.g., Wooten v. Brunsman*, 2007 WL 527886, \*2-3 (S.D. Ohio Feb. 14, 2007) (report and recommendation) (noting that, since

---

[8] The commitment-paper requirement for an Ohio state habeas corpus petition is found in O.R.C. § 2725.04(D).

[9] The state court also dismissed Pena's state habeas petition because the arguments raised were barred by *res judicata* and/or were not cognizable in habeas corpus.
*http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2016/1062* (last visited 1/4/2017) (online docket, Third District Court of Appeals' June 21, 2016, Judgment Entry, pp. 3-4, attached to Notice of Appeal, filed July 18, 2016).

petitioner's state habeas petition was denied for failure to comply with the filing requirements of O.R.C. § 2925.04(D), it appeared that the state habeas petition was not "properly filed" to toll the statute of limitations under 28 U.S.C. § 2244(d)(2) (relying in part on *Artuz*, 531 U.S. at 8 and *Bloss v. Rogers*, 65 Ohio St.3d 145 (1992) (Supreme Court of Ohio decision holding "that a state habeas corpus petition that fails to comply with O.R.C. 2925.04(D) is 'fatally defective.'").

Since Pena's state habeas petition did not toll the statute of limitations, the statute of limitations expired on February 23, 2016, and Pena's Petition filed on April 14, 2016, is barred by the statute of limitations absent equitable tolling.

### b.  Pena is not entitled to equitable tolling of the statute of limitations

AEDPA's statute of limitations is subject to equitable tolling.  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)).  Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Robinson v. Easterling*, 424 Fed. Appx.  439, 442 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling.  As discussed below, a petitioner, by satisfying the *Holland* two-part test, may be entitled to traditional equitable tolling.  Additionally, a petitioner may be entitled to actual innocence equitable tolling.  However, for the reasons set forth below, Pena is entitled to neither form of equitable tolling.

### i.  Pena is not entitled to traditional equitable tolling

A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has

been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562.  Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

As indicated above, when Pena sought and was granted voluntary dismissal of his federal habeas petition by this Court in Case No. 3:15-cv-01151, he was warned by both the undersigned in a report and recommendation and by the Honorable Senior United States District Judge James G. Carr that he may be prevented from timely filing a federal habeas petition.  *See* Case No. 3:15-cv-01151, Doc. 14, Page ID# 587 and Page ID# 593.  Also, while Pena claims that he has been diligently pursuing his rights his actions do not demonstrate such diligence.  For example, Pena did not timely appeal to the Supreme Court of Ohio from the state court of appeals' February 7, 2014, decision affirming his conviction.  Also, he waited until February 12, 2016, over two years following the state court of appeals' decision affirming his conviction, to seek state habeas relief.  Furthermore, to the extent that Pena claims that his pro se status impeded his ability to proceed properly or act with the requisite degree of diligence, a petitioner's pro se status is insufficient in itself to warrant the equitable tolling of the statute of limitations *See Hall*, 662 F.3d at 751-752.   Based on the foregoing, the undersigned does not find that Pena has been diligently pursuing his rights and/or that some extraordinary circumstance stood in Pena's way to prevent him from timely filing his federal habeas petition.

### ii.       Pena is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that

23

by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012).  "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied).  "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court has underscored the fact that "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329) (emphasis supplied).

Pena does not present new, reliable evidence to support a claim of factual innocence. Any asserted claim of innocence is one of legal insufficiency.  Accordingly, the undersigned finds no basis for concluding that Pena should be entitled to tolling of the statute of limitations based on a claim of actual innocence.

## IV.    Conclusion and Recommendation

For the reasons set forth above, the undersigned concludes that Pena's Petition is barred by the statute of limitations under § 2244(d)(1)(A).[10] Thus, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (Doc. 6) and **DISMISS with prejudice** Pena's Petition (Doc. 1) as barred by the statute of limitations.

January 5, 2017

_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[10] Since Pena's Petition is subject to dismissal based on the statute of limitations, the Court need not address Respondent's alternative argument that Pena's Petition is subject to dismissal because his habeas grounds are procedurally defaulted.